UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM ARMOUR,

    Petitioner,

v.

CONNIE HORTON,

    Respondent.
_____/

Case Number 2:15-CV-10753
HONORABLE LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER**
**DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**

Michigan state prisoner William Armour filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions following a jury trial for second-degree murder, Mich. Comp. Laws § 750.317; felonious assault, Mich. Comp. Laws § 750.82; and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. Having reviewed Armour's original and amended petitions, the warden's original and supplemental responses, and the state-court record, the Court concludes that Armour is not entitled to relief on his claims. So the Court will deny Armour's petition.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This Court recites the facts as found by the Michigan Court of Appeals. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> The victim in this case, Sheldon Miller, died from multiple gunshot wounds, which were inflicted in Detroit on the afternoon of October 28, 2007.
>
> The prosecutor presented evidence at trial that [Armour] and an accomplice confronted the victim as he left a store and was entering the passenger side of a car, and that [Armour] and an accomplice shot the victim five times. The victim's cousin, who had accompanied the victim to the store, testified with certainty at trial that [Armour] and another man ambushed, shot and killed the victim, and that [Armour] also aimed his handgun at the cousin.

1

> [Armour] made two statements to the police in December 2007; [Armour] admitted that he had ridden in a car with another man who suddenly shot the victim, but [he] denied pointing or holding a weapon.

*People v. Armour*, No. 288102, 2010 WL 3928750, at *1 (Mich. Ct. App. Oct. 7, 2010) (paragraphing altered).

Armour's conviction was affirmed on appeal. *See id.*; *People v. Armour*, 795 N.W. 2d 22 (Mich. 2011).

Armour then filed a motion for relief from judgment with the trial court, which was denied. *People v. Armour,* No. 08-001845-FC (Mich. 3d Cir. Ct. Oct. 11, 2011). The Michigan appellate courts denied Armour leave to appeal. *People v. Armour*, No. 311341 (Mich. Ct. App. June 20, 2013); *People v. Armour*, 843 N.W. 2d 499 (Mich. 2014).

In February of 2015, Armour filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The warden filed an answer to the petition on September 9, 2015.

On October 14, 2015, Armour filed a motion to hold the petition in abeyance to permit him to return to the state trial court to file a second motion for relief from judgment. This Court granted that motion. *See Armour v. MacLaren*, No. 15-10753, 2015 WL 9918195 (E.D. Mich. Dec. 4, 2015).

Armour then filed a second motion for relief from judgment. He asserted claims of deficient performance based on his counsel's explanation of a plea deal in violation of *Lafler v. Cooper*, and a sentencing error in violation of *Alleyne v. United States*. The trial court denied the motion on the ground that Michigan Court Rule 6.502(G) prohibits the filing of second or successive motions for relief from judgment unless there has been a retroactive change in the law or newly discovered evidence. And the court found that neither of Armour's claims involved a retroactive change in the law or newly discovered evidence. *People v. Armour,* No. 08-001845-FC (Mich. 3d Cir. Ct.

Nov. 5, 2015). The Michigan Court of Appeals denied Armour's post-conviction appeal "because the defendant failed to establish that the trial court erred in denying his motion for relief from judgment." *People v. Armour*, No. 332411 (Mich. Ct. App. Sept. 27, 2016). The Michigan Supreme Court denied Armour's post-conviction appeal "because [his] motion for relief from judgment is prohibited by MCR 6.502(G)." *People v. Armour*, 893 N.W.2d 635 (Mich. 2017).

On August 11, 2017, this Court granted Armour's motion to reopen his case and to amend the petition. (ECF No. 15.) Armour seeks relief on the following six grounds:

> I. Petitioner was deprived of his Sixth Amendment right to counsel of choice during a critical stage of the proceedings, where a photographic line-up was conducted with a court appointed attorney outside of the courtroom, while retained counsel was in the courtroom. The state court's finding that Petitioner failed to show how he was prejudice [sic] by this violation was contrary to and an unreasonable application of clearly established Supreme Court law.
>
> II. Petitioner was denied due process by introduction of identification testimony based on the fact that Petitioner was in custody at the time and had a right to a live line-up, and he was the victim of an unnecessarily suggestive pre-trial photographic line-up, which was held minutes before Petitioner's preliminary examination by the Detroit Police Department, where the witness was told that he picked the right person just prior to confronting Petitioner at the preliminary examination.
>
> III. Where Petitioner invoked his right to counsel, all questioning should have ceased, and the state court failure to suppress his statement denied Petitioner his constitutional right to due process of law under the Fifth and Fourteenth Amendment [sic] to the United States Constitution.
>
> IV. The actual innocence of Petitioner Armour, or the colorable claim of actual innocence entitles Petitioner to a new trial where he has new reliable evidence that someone else committed the crime for which he stands convicted.
>
> V. [Petitioner] received ineffective assistance of trial court [sic], where counsel failed to fully and effectively explain a plea offer and ramification of rejecting that offer to his client. *Strickland v. Washington*, 466 US 668 (1984) and *Lafler v. Cooper*, 566 US ___; 132 S. [sic] 1376 (2012) & *Missouri v. Frye*, 566 US ___, 132 S. ct 1399 (2012). (See Ex. D---Successive Motion for Relief from Judgment at pages 1-17).

VI. [Petitioner's] due process rights under the Sixth and Fourteenth Amendment where violated; where Michigan sentence guideline scheme erroneously allows judges to find by a preponderance of the evidence facts that are then used to increase the mandatory minimum punishment a defendant receives. *Alleyne v. U.S.*, 133 S. ct 2151 (2013). (See Ex. D---Successive Motion for Relief from Judgment at pages 1-17).

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA)—28 U.S.C. § 2254 in particular—"confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III. DISCUSSION

### A. Claim # 1. The denial of the right to counsel of choice.

Armour first claims that he was denied his Sixth Amendment right to the counsel of his choice where a photographic line-up was held just prior to the preliminary examination, at which a court-appointed attorney was present instead of Armour's retained counsel who was with Armour in the courtroom.

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he will be represented by a particular attorney. *Serra v. Michigan Department of*

*Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993) (citing *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). However, a criminal defendant who retains his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale,* 491 U.S. at 624-25).

"It is settled that a complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error." *Van v. Jones*, 475 F.3d 292, 311-312 (6th Cir. 2007) (citing cases). But a pre-trial photographic identification is not a critical stage of the proceedings. *See id*. (citing *United States v. Ash*, 413 U.S. 300, 321 (1973)). Thus, "Petitioner . . . does not have a constitutional right to the presence of counsel at a photographic identification." *Whalen v. Johnson*, 438 F. Supp. 1198, 1203 (E.D. Mich. 1977) (citing *Ash*, 413 U.S. at 321); *see also Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000); *Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (finding that Sixth Amendment does not guarantee the accused the right to counsel at a photographic array). Because Armour did not have a right to any counsel at the photographic line-up, the absence of his retained counsel did not violate his Sixth Amendment rights or entitle him to habeas relief on his first claim. *See, e.g.*, *United States v. Nguyen*, 98 F. App'x. 1002, 1003 (5th Cir. 2004). Thus, even if the Michigan Court of Appeals' harmless error analysis was unreasonable such that Armour has cleared § 2254(d)(1), on *de novo* review he has not established a Sixth Amendment violation. *See Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("When a state court's adjudication of a claim is dependent on an antecedent

unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires.").

**B. Claim # 2. The photographic line-up claim.**

Armour next challenges the pre-trial photographic array identification as being unduly suggestive.

Prior to trial, Armour moved to suppress the admission of evidence that the victim's cousin, Alan Sutherland, had identified Armour as one of the perpetrators from a photographic lineup. Armour claimed that the police violated his constitutional rights by conducting a photographic array instead of a live lineup, even though Armour was already in custody, and that the police officer who showed the photo array may have confirmed to Sutherland, after his identification, that he had picked the "right" person. Armour says that the officer's confirmation, combined with the fact that Armour was present at the defendant's table at the preliminary exam, led the witness to identify Armour.

The Michigan Court of Appeals decided this claim on the merits. It found as follows:

> At the *Wade* hearing, the police sergeant in charge of the case testified that while [Armour] remained incarcerated on a matter unrelated to the victim's murder, the officer had arranged to present the cousin with an in-person lineup in the presence of a "show up attorney." The sergeant explained that the live lineup never occurred because [Armour] "refused to come out of his cell to participate in the process." The sergeant continued that he instead arranged for the cousin to view a six-person photographic lineup. The police officer who conducted that lineup testified that it took place just before [Armour's] preliminary examination, and that the cousin identified [Armour's] photograph from the six images presented. The officer confirmed that a showup attorney had appeared for the photographic lineup procedure. When asked if he advised the cousin that he had selected defendant, the officer replied, "I don't believe I told him he picked the defendant out," then added, "I don't really remember if I did tell him that was the correct one."
>
> In setting forth its decision to deny defendant's motion to preclude identification testimony by the victim's cousin, the trial court found credible the sergeant in charge of the case, and opined that the photographic array from which the cousin had identified [Armour] featured subjects of similar appearance, and thus did not

6

constitute an unfairly suggestive lineup array. With respect to defendant's complaint that the photographic lineup attorney was not defendant's retained counsel, the court viewed the complaint as neither raising constitutional concerns, nor having any bearing on the question whether the police had conducted an unduly suggestive lineup procedure.

Defendant insists that because the police had him in custody at the time of the lineup, the use of a photographic lineup instead of an in-person lineup invalidated the resulting identification.

* * *

In this case, the sergeant in charge of the case, whose testimony the trial court expressly credited, recalled at the evidentiary hearing that defendant had refused to participate in a live lineup, thereby setting forth a legitimate reason for holding the photographic lineup. Again, we defer to the trial court's credibility determinations, and conclude that the police in this case properly conducted the photographic lineup necessitated by defendant's refusal to participate in a live lineup.

Defendant also argues that the equivocal testimony of the officer who conducted the photographic lineup, concerning whether he told the victim's cousin that he had identified the person of interest from the array, gives rise to an inference that the police improperly suggested defendant to that witness, thus tainting the cousin's subsequent in-court identification at defendant's preliminary examination.

However, the officer equivocated only after unconditionally denying that he had said anything to indicate that the cousin had chosen the person whose preliminary examination was about to begin. Even resolving the officer's equivocation in the light most damaging to the prosecutor, the evidence establishes that any police confirmation of the cousin's photograph selection occurred after the cousin had made his selection. Because our review of the totality of the circumstances surrounding the photographic lineup reveals only minimal potential, postidentification suggestiveness, we discern no basis for characterizing the photographic lineup procedure in this case as unduly suggestive or otherwise constitutionally unsound.

*People v. Armour*, 2010 WL 3928750, at * 5–6 (internal citations omitted). There is nothing unreasonable about this decision and it is fully supported by the record.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).

7

A criminal defendant has the burden of proving that the identification procedure was impermissibly suggestive. If he does so, the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240, n.31 (1967). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992).

Armour first argues that, because he was in custody, the police violated his constitutional rights by conducting a photographic lineup rather than a live lineup.

A criminal defendant does not have a constitutional right to a corporeal lineup. Instead, his request is addressed to the trial court's sound discretion. *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866 (E.D. Mich. 2009) (citing cases); *Payne*, 207 F.Supp. 2d at 645 (citing cases). Thus, "the government is not required to conduct a lineup . . . and the availability of time for a lineup plays no part in determining whether a photographic spread is impermissibly suggestive." *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987).

Additionally, the state courts found credible the testimony of the officer in charge of the case that the photographic lineup was necessitated by Armour's refusal to participate in a live line-up. *People v. Armour*, No. 288102, 2010 WL 3928750, at *5 (Mich. Ct. App. 2010). AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Only if Armour "rebut[s] the presumption of correctness by clear and convincing evidence" may the Court disregard those determinations. *Id*; *Bailey v. Mitchell*,

271 F. 3d 652, 656 (6th Cir. 2001). Armour has failed to do so. He is not entitled to relief because the police did not conduct a live lineup.

Armour also claims that the photographic identification was unduly suggestive because the officer who conducted the lineup may have told Sutherland after he positively identified Armour that he had picked out the right person.

Armour is not entitled to relief for several reasons. First, he provided no evidence that the officer actually told Sutherland that he had chosen the right suspect. When the officer testified at the *Wade* hearing, he initially indicated that he did not believe he told the victim that he had picked out the correct suspect and then added that he could not remember whether he had made this comment. Such equivocal testimony does not establish that Sutherland was in fact told that he had chosen the correct suspect out of the photographic array. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g.*, *Washington v. Renico*, 455 F. 3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding).

Second, the Michigan Court of Appeals found that "[e]ven resolving the officer's equivocation in the light most damaging to the prosecutor, the evidence establishes that any police confirmation of the cousin's photographic selection occurred *after* the cousin had made his selection." *Armour*, 2010 WL 3928750, at *6. (emphasis in original). There has been no showing that this finding is erroneous. And any such post-identification affirmation would not render the lineup procedure unduly suggestive. *See Gregory-Bey v. Hanks*, 332 F.3d 1036, 1046-47 (7th Cir. 2003).

9

Third, the fact that Armour was subsequently identified by Sutherland at the preliminary examination does not make the identification procedure unreliable or unnecessarily or impermissibly suggestive. In *Baker v. Hocker*, 496 F. 2d 615, 617 (9th Cir. 1974), the Ninth Circuit held that a robbery victim's identification of the defendant at a preliminary hearing, after having failed to identify him at a police lineup, was not unnecessarily or impermissibly suggestive, even though the petitioner in that case was seated at the preliminary hearing next to the two co-defendants whom the victim had previously identified, thereby suggesting that petitioner was the third robber. In rejecting the claim, the Ninth Circuit admitted that any in-court identification confrontation, whether at a preliminary hearing or at trial, "carries with it the stigma of the inevitable suggestion that the state thinks the defendant has committed the crime." *Id.* at 617. However, the Court ruled that more than suggestion is required for a due process violation. The procedure must create 'unnecessary' or 'impermissible' suggestion. *Id.* Again, no such showing can be made here because the record establishes that Sutherland had already identified Armour in the photo array prior to seeing him in the courtroom. And there is nothing to suggest he only reconfirmed this identification in the courtroom because he was told he had picked the correct person.

Additionally, even assuming that the pre-trial identification procedures were unduly suggestive, Armour has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. Sutherland had a good opportunity to look at Armour because he was present in the convenience store parking lot where the shooting took place. (Tr. 8/12/08, p. 60). Sutherland was parked near the entrance of the store when he saw Armour and his accomplice run up to them with their guns. (*Id.*, pp. 66-67). Sutherland was approximately 18-20 feet away from Armour at the time of the incident. (*Id.*, p.

80). Sutherland was "positive" that Armour was one of the shooters. (*Id.*, p. 61). These factors all support a finding that an independent basis existed for his in-court identification of Armour. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001.)

In light of the fact that Sutherland and his cousin were being shot at, it was not unreasonable for the state courts to conclude that Sutherland paid a high degree of attention to Armour. *Accord Harrington*, 562 U.S. at 102. Finally, the reliability of Sutherland's in-court identification is supported by the fact that he testified that he was positive that Armour was one of the shooters. *Howard,* 405 F.3d at 473. Armour is not entitled to relief on his second claim.

### C. Claim # 3. The involuntary statement claim.

Armour next claims that his statement to the police should have been suppressed because it was made after he invoked his right to counsel and only after promises of leniency were made to induce his statement.

A pre-trial evidentiary hearing was conducted on Armour's motion to suppress his statement. Detective Edward Williams testified that Armour had informed him that he completed the 11th grade. Williams had Armour read his constitutional rights and he indicated that he understood them and put his initials beside each constitutional right on the form. (Tr. 8/4/08, p. 11). The interview began at 3:45 p.m. and the written statement was taken at 4:45 p.m. (*Id*., pp. 15, 22, 69).

The next day, Detective Williams returned to speak to Armour. Williams testified that he provided Armour with his constitutional rights once again, which were contained in a second advice-of-rights form. According to Williams, Armour did not appear to be under the influence of any controlled substance nor did he require medical treatment. Williams testified that Armour was not promised anything in exchange for giving a statement. (*Id.*, p. 18). Williams acknowledged

that between these two interviews, Armour was interviewed by another detective, Todd Eby. (*Id.*, p. 19). Williams testified that there were also other investigators who spoke to Armour. Williams testified that throughout the various interrogations, Armour never requested an attorney. (*Id.*, p. 20).

Armour gave a different version. He testified at the evidentiary hearing that he was arrested at his probation officer's office and held in custody for several hours before Williams met to speak with him. (*Id.*, pp. 28-29). He testified that he asked Williams about whether he had a right to an attorney. Although Williams answered affirmatively, he continued to ask Armour questions. (*Id.*, p. 30). Armour assumed that because Williams did not honor his request for an attorney, that he did not have a right to have an attorney present. Armour further claimed that Williams told him to tell him what he wanted to know and promised that Armour would be home by Christmas (which was a few days away). (*Id.*, p. 35).

At the request of Armour's counsel, the trial judge reviewed the video-taped statement between Armour and Sergeant Todd Eby. The judge indicated that there were two portions of the tape where Armour informed Eby that Williams had told him that if he helped them, the police would help him. However, Armour acknowledged that Eby had not promised him anything. (Tr. 8/5/08, p. 27). The judge also indicated that Armour was specifically asked if he had been promised anything for his information and he indicated that no promises had been made. (*Id.*, pp. 27-28).

The trial judge denied the motion to suppress. She indicated that she did not believe Armour's testimony that he had invoked his right to counsel or that any promises had been made to get him to speak with the police. (Tr. 8/5/08, pp. 29-31). The Michigan Court of Appeals found no basis to overturn these credibility determinations. *Armour*, 2010 WL 3928750, at *3–4.

Again, § 2254(e) dictates that this court presume the correctness of state court factual determinations. This includes factual determinations as to the voluntariness of a statement to police, such as whether the police engaged in intimidation tactics. *See Miller v. Fenton*, 474 U.S. 104, 112 (1985). The presumption of correctness also "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting evidence." *McPherson v. Woods*, 506 F. App'x. 379, 387 (6th Cir. 2012); *see also McQueen v. Scroggy*, 99 F. 3d 1302, 1310 (6th Cir. 1996) (implicit findings are also presumed to be correct "because of the trial court's ability to adjudge the witnesses' demeanor and credibility").

Here, Armour has failed to present clear and convincing evidence, *see* 28 U.S.C. § 2254(e), to rebut the state court's findings that he had not invoked his right to counsel and that the police did not promise leniency to induce an incriminating statement. Thus, the finding that his statement was not involuntarily made is entitled to the presumption of correctness. *See Pritchett v. Pitcher*, 117 F.3d 959, 963-64 (6th Cir. 1997). In analyzing Armour's motion to suppress, the trial judge was required to make a credibility determination between Armour and the officers. *See McPherson*, 506 F. App'x at 388. And "It was not unreasonable for the Michigan Court of Appeals to defer to the credibility determination of the trial judge. The law of the Supreme Court, the Sixth Circuit, and the state of Michigan all call for deference to trial judges on matters of witness credibility under these circumstances." *Id.* Armour is not entitled to habeas relief on this claim.

**D. Claim # 4. The actual innocence claim**.

Armour next claims he is actually innocent of the crimes. The basis for this claim is the affidavit of Caserae Barnett, dated August 19, 2011. In the affidavit, Barnett states he was present at the time of the shooting and that Armour was not the shooter, because Armour is a small, light

13

skinned man while the shooter was a tall man with dark skin and braided hair. (ECF No. 18, PageID.1525–1526.)

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly discovered evidence is not, by itself, grounds for federal habeas relief; there must be a constitutional violation in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *Id.*; *see also McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854–55 (6th Cir. 2007) (collecting cases).

The Supreme Court's decision in *House v. Bell*, 547 U.S. 518 (2006), does not affect this Court's adjudication of Armour's claim. In *House*, the Court noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* (quoting *Herrera*, 506 U.S. at 417). But this is not a capital case and, outside of the death-penalty context, the Supreme Court has declined to recognize a freestanding innocence claim as a basis for a writ of habeas corpus. Armour is therefore not entitled to relief on his actual innocence claim. *See Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007).

The Court further notes that long-delayed affidavits that seek to shift the blame for the crime to another person are "treated with a fair degree of skepticism." *Herrera*, 506 U.S. at 423. This one included. At the time he authored the affidavit, Barnett was serving a prison sentence for

several counts of armed robbery, carjacking, and fleeing and eluding a police officer.[1] Affidavits from fellow inmates that are created after trial are not sufficiently reliable evidence to support a finding of actual innocence. *See Milton v. Secretary, Dep't Of Corr.,* 347 F. App'x. 528, 531-32 (11th Cir. 2009). Barnett's failure to come forward in a timely manner and to disclose the allegedly exculpatory information to the police further undermines the credibility of the affidavit. *See Ashmon v. Davis*, 508 F. App'x. 486, 488 (6th Cir. 2012).

In sum, Armour's freestanding actual innocence claim, based solely on an affidavit that was executed almost three years after trial and was offered without adequate explanation as to the delay, does not entitle him to habeas relief. *See Legrone v. Birkett*, 571 F. App'x. 417, 421 (6th Cir. 2014).

### E. Claims # 5 and # 6. Armour's remaining claims are withdrawn.

In his fifth claim, Armour alleges that his trial counsel gave him inadequate advice with respect to a plea bargain offer that caused him to reject that offer and proceed to trial. Armour bases his claim on the Supreme Court cases of *Lafler v. Cooper*, 566 U.S. 156 (2012) and *Missouri v. Frye,* 566 U.S. 134 (2012), both of which held that a criminal defendant is entitled to the effective assistance of counsel during the plea bargaining process. In his sixth claim, Armour argues that his Sixth Amendment right was violated when, in scoring sentencing variables, the judge found facts that had not been found beyond a reasonable doubt by a jury or admitted by Armour. Armour relies on *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013), in which the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt.

---

[1] According to the Michigan Department of Corrections' Offender Tracking Information System (OTIS), Barnett was released on parole on January 19, 2018.

In his response brief, the Warden argues that these claims are procedurally defaulted because Armour raised them for the first time in his second post-conviction motion for relief from judgment and the state courts relied on Michigan Court Rule 6.502(G) to reject Armour's post-conviction motion. The Warden further argues that both claims are barred by the non-retroactivity doctrine because they are based on Supreme Court cases that were issued after Armour's conviction became final and have not been made retroactive to cases on collateral review.

In his traverse brief, Armour agrees that these claims are barred by the non-retroactivity doctrine. (ECF No. 23, PageID.1839–1840.) In other words, Armour concedes that *Lafler*, *Frye*, and *Alleyne*, have not been applied retroactively and thus, these claims must be dismissed. (*Id*.)

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Armour's Petition for Writ of Habeas Corpus. The Court does not believe that reasonable jurists would debate how it resolved Armour's claims. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). So this Court DENIES Armour's motion for a certificate of appealability. But the Court GRANTS Armour leave to appeal without prepayment of the filing fee and costs. *See* 28 U.S.C. § 1915(a)(3).

                                                  s/Laurie J. Michelson
                                                  LAURIE J. MICHELSON
                                                  UNITED STATES DISTRICT JUDGE

Date: March 6, 2019

CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, March 6, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

                                            s/William Barkholz
                                            Case Manager